UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
MAR 16 2007

| | | |
|---|---|---|
| WILLIAM McBETH, | ) | Civil No. |
| PLAINTIFF, | ) | |
| VS | ) | **COMPLAINT** |
| INNOVATIVE INDUSTRIES, INC., d/b/a INTERNATIONAL HOUSE OF PANCAKES, | ) ) | |
| DEFENDANT. | ) | |

## JURISDICTION

(1) This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

(2) This Court has jurisdiction over Plaintiff's discrimination claim pursuant to 42 U.S.C. §2000e-5 (f)(3) and 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

(3) Plaintiff William McBeth is a resident of Sioux Falls, South Dakota.

(4) Defendant is a North Dakota business entity doing business as International House of Pancakes ["IHOP"] at 4510 West 41st Street in Sioux Falls, South Dakota.

(5) Plaintiff timely filed his charge of race discrimination and retaliation with the South Dakota Division of Human Rights and received a Right to Sue Notice on February 27, 2007.

## COUNT ONE

## ACTIONS FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(Racial Discrimination)

(6)     Plaintiff McBeth is a black male.

(7)     McBeth was employed by the Defendant IHOP an assistant manager since August 1, 2006.

(8)     McBeth worked extra hours and took on additional job responsibilities throughout his employment at IHOP.

(9)     McBeth was qualified for his position and performed in a manner that met IHOP's expectations.

(10)    During the course of his employment, McBeth noticed that black employees in the restaurant were treated with less respect than white employees in terms of hours, attendance and discipline.

(11)    During the course of his employment, McBeth, the only black management employee, was intentionally excluded from a Chamber of Commerce photograph that featured the other management staff even though he was available for the photograph and had worked to prepare the restaurant for the event.

(12)    Or our about September 1, 2006, McBeth reported to the Regional Manager and the General Manager that an employee at the restaurant had made an offensive racial comment. Specifically, McBeth had reprimanded a white female employee who responded to his reprimand by stating, "We're going to get your black ass."

2

(13) To the best of McBeth's knowledge, the female employee in question had expressed having a prior "bad experience" that made her feel justified in having a racial animus toward black males.

(14) To the best of McBeth's knowledge his report of the co-worker's racially offensive remark was not addressed by management.

(15) On or about September 10, 2006, McBeth heard from other staff that the employee he had complained about had alleged that he had sexually harassed her and a friend of hers.

(16) McBeth contacted his direct supervisor and requested a meeting to address the female employee's earlier comment, her apparent animus toward him as a black male and her attempt to get other employees to make false statements regarding sexual harassment.

(17) McBeth's supervisors did not meet with McBeth but instead put him on an unpaid suspension while they conducted an investigation into the sexual harassment allegations which included a claim or claims that McBeth had touched one or more employees inappropriately and made sexually offensive remarks at work.

(18) McBeth disputed the white employees' allegations and reminded his supervisors that surveillance cameras stationed throughout the IHOP restaurant would decisively show whether the white employees' allegations of offensive touching had not occurred.

(19) No attempt was made to review or preserve the surveillance videos.

(20) On September 12, 2006, McBeth made a written complaint to the Regional Manager regarding racial discrimination against him in the workplace.

(21) McBeth's written report of racial discrimination was never investigated or addressed by upper management.

(22) The white employee's sexual harassment claim received immediate attention from and was addressed by upper management.

(23) White employees who made sexually offensive remarks or gestures in the restaurant, including McBeth's accusers, were not disciplined or terminated.

(24) Several of McBeth's co-workers offered statements to IHOP which supported McBeth's version of events.

(25) At least one white male employee who worked with McBeth admitted to hugging, groping and making sexual gestures to McBeth's accusers; this same employee was caught on a surveillance camera shaping food to look like genitalia. This white employee was not disciplined.

(26) McBeth's primary accuser made sexual remarks and gestures toward other white employees in the workplace on a regular basis and also posed in a sexually suggestive stance for a photograph at work while wearing her uniform in an unbuttoned state. This white employee was not disciplined.

(27) On September 18, 2006, McBeth was terminated from employment for alleged sexual harassment.

(28) On September 18, 2006, McBeth was told that neither he nor his family was welcome in the IHOP restaurant.

(29)     McBeth was treated differently in the terms and conditions of his employment than white employees.

(30)     McBeth was replaced by a white male.

(31)     The conduct of IHOP during McBeth's complaints, as compared to how white employees were treated in terms of hours, work assignments, investigation and discipline, constitutes racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

(32)     McBeth was subject to adverse and unequal treatment with respect to the terms and conditions of his employment in terms of hours, work assignments, investigation and discipline because of his race.

(33)     Other similarly situated employees who are not racial minorities received better work conditions, received less disciplinary consideration for violations of policy and had their complaints taken more seriously by management than McBeth had.

(34)     McBeth was subject to different treatment and altered working conditions in the workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2000e.

(35)     McBeth lost wages, benefits, incurred costs and related expenses as a result of being unemployed and has suffered humiliation, anxiety and stress as a result of IHOP's actions.

(36)     IHOP's actions were willful, reckless and malicious and should subject IHOP to punitive damages.

<u>COUNT TWO</u>
<u>ACTIONS FOR VIOLATIONS OF TITLE VII OF</u>

## THE CIVIL RIGHTS ACT OF 1964
(Retaliation)

(37)   McBeth realleges and incorporates by reference herein paragraphs 1 through 36 of the Complaint.

(38)   McBeth made a verbal complaint about racially discriminatory remarks and treatment to IHOP management on or about September 1, 2006 and made a written complaint to the Regional Manager on September 12, 2006.

(39)   Even though co-workers and surveillance video supported McBeth's version of events, McBeth was terminated six days after making a second report of racially discriminatory treatment.

(40)   IHOP retaliated against McBeth as a result of his reports of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-20.

(41)   As a result of his complaints about discriminatory treatment, McBeth was subject to pretextual and false claims of sexual harassment against at least one racially biased co-worker.

(42)   McBeth lost wages, benefits, incurred costs and related expenses as a result of being unemployed and has suffered humiliation, anxiety and stress as a result of IHOP's retaliatory actions.

(42)   IHOP's actions were willful, reckless and malicious and should subject IHOP to punitive damages.

.   **WHEREFORE**, McBeth prays for judgment against IHOP as follows:

a. For a trial by jury on the merits of his claims;

b. For compensatory damages in such amount as the evidence at trial may show;

c. For damages, including but not limited to, those damages allowed by 42 U.S.C. §2000 *et seq*, the Civil Rights Act of 1991, Public Law 162-166, and any other pertinent and applicable statute, rule or regulation, whether state or federal;

d. For punitive damages in such an amount as the evidence at trial may show; and

e. For costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 15th day of March, 2007.

JOHNSON & EKLUND LAW OFFICE

_____
Stephanie E. Pochop
P.O. Box 149
Gregory, SD  57533
ATTORNEY FOR PLAINTIFF